1  James E. Doroshow (SBN 112920)
   Jeffrey S. Kravitz (SBN 66481)
2  Jeff Grant (SBN 218974)
   FOX ROTHSCHILD LLP
3  1800 Century Park East, Suite 300
   Los Angeles, CA 90067-1506
4  Tel: 310.598.4166 / Fax: 310.556.9828
5  jdoroshow@foxrothschild.com
   jskravitz@foxrothschild.com
6  jgrant@foxrothschild.com

7  Attorneys for Plaintiff
8  PACIFIC LOCK COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC LOCK COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOCKEDUP LTD., a foreign limited liability corporation; JEROD KLINK, an individual; and DOES 1-10,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF CONTRACT;**<br>2) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>3) **BREACH OF FIDUCIARY DUTY;**<br>4) **FRAUDULENT INDUCEMENT;**<br>5) **INTENTIONAL MISREPRESENTATION AND FRAUD;**<br>6) **NEGLIGENT MISREPRESENTATION**<br>7) **PATENT FALSE MARKING UNDER 35 U.S.C. § 292;**<br>8) **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND**<br>9) **UNFAIR COMPETITION, INCLUDING VIOLATION OF CAL. BUS. & PROF. CODE § 17200**<br><br><u>JURY TRIAL REQUESTED</u> |

ACTIVE 40791440v3 06/14/2016            **COMPLAINT**

For its Complaint, Plaintiff Pacific Lock Company ("PacLock" or "Plaintiff") hereby alleges as follows:

## SUMMARY OF ACTION

1. This is a civil action seeking damages for Defendants' repudiation of an exclusive business agreement to develop Bluetooth-enabled padlocks, as well as false marking on components produced by Defendants and for other misrepresentations. Among other relief, Plaintiff seeks compensation for its injuries, as well as injunctive relief protecting Plaintiff's prospective economic advantage from ongoing interference by Defendants, along with relief determining that Defendants owe Plaintiff a duty to indemnify Plaintiff because of Defendants' wrongful actions.

## PARTIES

2. Plaintiff is a family-owned corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant LockedUp Ltd. ("LockedUp") is a corporation organized under the laws of Canada, with its principal place of business in Ontario, Canada.

4. Plaintiff is further informed and believes, and on that basis alleges, that Defendant Jerod Klink ("Klink") is an individual residing in Ontario, Canada and the owner of LockedUp. Klink, together with Defendants LockedUp and Does 1 through 10, are hereinafter collectively referred to as "Defendants."

5. Plaintiff does not presently know the true names or capacities of those persons and entities sued herein as Does 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Doe Defendants is in some manner legally responsible for the damages suffered by Plaintiff. Plaintiff will amend this pleading to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate factual allegations, as may be necessary.

6. Plaintiff is further informed and believes, and on that basis alleges, that there exists a unity of interest and ownership between Klink and Does 1 through 10, on the one hand, and LockedUp, on the other, such that any individuality and separateness between them has ceased. Plaintiff is also informed and believes, and on that basis alleges, that LockedUp is a mere shell through which Klink and Does 1 through 10 carry out business and exercise complete control over LockedUp so that any individuality and separateness of Klink and Does 1 through 10, on the one hand, and LockedUp, on the other, has ceased. Plaintiff is informed and believes, and on that basis alleges, that LockedUp is the alter ego of Klink and Does 1 through 10.

## JURISDICTION & VENUE

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. This Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the dispute arises under federal law. The Court also has supplemental jurisdiction over the state claims in this Complaint pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case and controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Defendants because they have had a continuous, systematic, and substantial presence within this jurisdiction including by regularly doing and soliciting business and deriving revenue from goods provided to individuals in this judicial district.

9. Venue is proper in this judicial district Court pursuant to 28 U.S.C. § 1391 because a substantial part of the underlying events giving rise to this Complaint occurred in this judicial district.

2
COMPLAINT
ACTIVE 40791440v3 06/14/2016

# FACTUAL ALLEGATIONS

10. Plaintiff was founded in 1998 in Los Angeles, California. It is one of the last family-operated manufacturers of physical security products in North America, with a core product line consisting of solid-body and laminated-body padlocks.

11. Plaintiff's machining center is located in Los Angeles, and it sources (and advertises that it sources) a majority of its components within the United States. Through many years of hard work and effort, Plaintiff has developed a favorable reputation among wholesale consumers of physical security products, including for its ability to craft and timely deliver high quality customized locks. Among other product features, Plaintiff advertises and sells locks with patent pending designs which prevent head-on attacks from bolt-cutters without sacrificing compactness and overall durability. Among other achievements, in 2015, Plaintiff was named as a Lockheed Martin Supplier of the Year.

12. In or around July 2014, Plaintiff was contacted by Defendant Klink, who at that time had recently been laid off by his employer, Research in Motion Limited ("RIM"), a company which later became known as Blackberry Limited. At that time, Klink proposed a business concept to Plaintiff to integrate digital wireless technology, known as Bluetooth, into "keyless" padlocks which could be opened by a signal from a nearby smartphone. At or about that time, Plaintiff is informed and believes, and on that basis alleges, that Klink formed LockedUp to begin trying to market this product idea. However, while forming LockedUp, Klink knew he had neither the business contacts or knowledge of the security industry necessary to produce a marketable product or to convince members of the public (including potential investors) of the value or viability of his business concept.

13. For Plaintiff's part, when Klink approached Plaintiff in July 2014, Plaintiff saw potential value in Defendants' proposal. Thus, even though Klink was otherwise struggling to bring a product to market and find potential investors, Plaintiff decided to take a risk with Defendants and to work with him to try to develop a

marketable product. Eventually, as the parties' business relationship was developing, Klink decided to visit Plaintiff's headquarters in California. In August 2014, Klink flew out to California and spent three days negotiating the terms of an agreement between Plaintiff and Defendants.

14. At that time, the parties agreed on terms governing their new business relationship. First, it was agreed that Plaintiff would purchase a license for LockedUp's technology, or, in the alternative, purchase electronic components from LockedUp that included LockedUp's technology, which would then be applied to or installed in Plaintiff's physical security products. Second, it was agreed that the parties' relationship would be mutually exclusive; that is, that Plaintiff would not source digital wireless technology for its physical security products from anyone but Defendants; and Defendants would not sell or license digital wireless technology to anyone other than Plaintiff. At the same time, the parties agreed Plaintiff who would also have a right of first refusal for all technology developed by Defendants. Third, it was agreed that Plaintiff would provide a warranty on product components relating to the physical locks, while Defendants would provide a warranty relating to the digital wireless technology itself. The two sides further agreed to share all profits between them on an equal 50/50 basis. These terms, among others, were later memorialized and confirmed in a Memorandum of Understanding drafted by Greg Waugh, the president of Plaintiff, and with Klink during a marketing trip to Mexico City. A true and correct copy of the parties' Memorandum of Understanding is attached hereto and incorporated by this reference as **Exhibit A**.

15. At the time of entering an agreement with Defendants, Plaintiff, who supplied products to the federal government and military contractors, understood the importance of maintaining compliance with all applicable laws, including but not limited to United States patent law and the North American Free Trade Agreement ("NAFTA"). For their part, Defendants knew this as well. In fact, to alleviate any concerns Plaintiff might have with Defendants' compliance with United States patent

laws or NAFTA, Defendants made express markings on their product components indicating that Defendants' products and invention were subject to a pending United States patent. At the same time, they also issued certificates of origin which represented that the product components which Defendants manufactured were made in Canada.

16. After entering into an agreement, the parties thereafter collaborated to develop a functional prototype for their new product, which they were eventually ready to introduce to the market for sale in or about mid-2015. Among many other investments of time and money, Plaintiff worked to identify and build relationships with two companies in China that could manufacture products to the parties' specifications. These efforts included, but were certainly not limited to, travel to China by Plaintiff's high-level personnel. Eventually, in September 2015, using Plaintiff's resources and business contacts in the physical security products industry, Plaintiff and Defendants then presented several companies with a demonstration of their Bluetooth-enabled padlocks, which Plaintiff advertised as part of a "PAC-BLU" series of padlocks. This initial marketing paid immediate dividends for the parties. Among other orders, these initial presentations led to a large purchase order from AT&T in Mexico for approximately $500,000 in padlocks, with the stated intent by AT&T to make additional orders. Once the product was delivered and installed for AT&T, TelCel, a considerably larger telecommunications company also located in Mexico, indicated it was interested in purchasing products from the parties in the PAC-BLU series.

17. Plaintiff is informed and believes, and on that basis alleges, that shortly after their initial sales presentations and initial orders were obtained, Defendants began to have second thoughts about their agreement with Plaintiff. Having already seen significant business potential for the sale of the parties' new product, and having already gained the benefits of Plaintiff's experience, reputation, market development and marketing skills, Defendants decided to breach their agreement with Plaintiff. At

or about this time, Defendants announced they would not honor the exclusivity terms of the parties' agreement, and instead insisted upon a new deal wherein any agreed upon exclusivity would expire after six months.

18. Defendants' sudden repudiation of the parties' exclusivity agreement on short notice was both extremely alarming and prejudicial to Plaintiff. In reliance on the parties' agreement and Defendants' representations to Plaintiff, Plaintiff had already made a long-term investment in Defendants and their product idea. And, if LockedUp were permitted to breach its agreement and license the code and the associated technology to Plaintiff's competitors in breach of the parties' agreement, Plaintiff would find itself competing with third parties for market share for the new Bluetooth-enabled locks Plaintiff had already developed. Making matters worse, even if Plaintiff were able to find another source for Bluetooth technology, it would still have to re-furbish the units it already sold to existing customers in order to ensure that all customer locks functioned as part of a single system.

19. Because Plaintiff was preparing for future orders from AT&T and others, time was of the essence: *i.e.*, it had to either accept LockedUp's revised terms in clear repudiation of the parties' agreement or find a new vendor. However, given LockedUp's refusal to abide by the parties' agreement and Plaintiff's growing distrust of Defendants, Plaintiff was forced to choose a new vendor for its technology. Having been forced to do so by Defendants' refusal to abide by the parties' agreement, Plaintiff incurred further damage. This included Plaintiff having to expend significant time, money and resources to redevelop an entirely new technological platform for the PAC-BLU series with a new vendor, thereby incurring additional damages in an amount to be proven at trial.

20. This however was not the full extent of Plaintiff's damages. At the time that LockedUp repudiated the parties' agreement, Plaintiff also asked LockedUp to identify what it previously told Plaintiff was a pending United States patent. In response, having previously represented to Plaintiff that a United States patent was

pending, Defendants then admitted for the first time that in fact no such patent was ever filed.  Having now learned the extent of LockedUp's duplicity, Plaintiff then investigated Defendants' other representations which formed the basis of the parties' agreement and business relationship.  At that time, Plaintiff discovered and now believes that, contrary to what Defendants represented to Plaintiff, the source for LockedUp's digital wireless components Defendants' components were not actually made in Canada.  As a result, Plaintiff learned for the first time that the products manufactured by Defendants may in fact not be NAFTA-compliant by any acceptable valuation method.  Thus, the markings of "patent pending" on Defendants' digital wireless components, and the certificates of origin representing the manufacturing location of these components, appear to have been clear misrepresentations by Defendants, and each of them.

21.     Defendants' fraudulent representations that a patent was pending and that they were in compliance with NAFTA laws now pose a significant risk to Plaintiff, and may expose it to significant claims of liability.  Among other damages, depending on the factual determinations at issue here, Plaintiff may now need to re-file reports made to the United States Customs and Border Patrol ("CBP"), and may also be subject to heightened investigation by the CBP with respect to future transactions.  Likewise, to the extent Defendants have misled Plaintiff into shipping products improperly marked patent pending, Plaintiff could find itself the object of claims by customers who purchased such products.  While Plaintiff of course itself has absolutely no fault for such markings, and any fault lies solely with Defendants, if Plaintiff is sued or otherwise has to defend itself, including against false marking claims, this too will cause Plaintiff to incur defense costs and related damages, irrespective of whether any such claims have merit against Plaintiff or otherwise.

22.     This however is not unfortunately the end of Plaintiff's injuries.  In further breach of the parties' agreement, Defendants have also breached Plaintiff's exclusivity rights, including with a prominent marketing company in Mexico, Inter

Ximple. Plaintiff is informed and believes, and on that basis alleges, that all of this has been done by Defendants in order to try to sell products directly to Inter Ximple and Plaintiff's other customers, thereby denying Plaintiff its rightful share of the parties' agreed-upon profits in the process of doing so. At the same time, Plaintiff is also informed and believes, and on that basis alleges, that Defendants have also attempted to sell products directly to TelCel, whose executives Klink met while working with Plaintiff, thereby causing TelCel (a potentially significant customer) to delay and/or reconsider purchasing products directly from Plaintiff as the parties agreed. Further still, Plaintiff is informed and believed, and on that basis alleges, that Defendants went behind Plaintiff's back and contacted the two Chinese manufacturing companies whom Plaintiff previously identified and with whom Plaintiff had developed relationships. On information and belief, Defendants falsely represented to the Chinese manufacturers that the parties were still working together when they were not, all in an attempt to fraudulently induce the two companies to manufacture product for Defendants.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT
### (Against All Defendants)

23.     Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 22 above as if fully set forth herein.

24.      As alleged above, Defendants entered into an agreement pursuant to which Plaintiff would purchase and develop product applications for digital wireless technology, in exchange for a percentage of the profits on all jointly-developed products sold to customers on a mutually-exclusive basis.

25.     For its part, Plaintiff performed all terms, conditions, covenants, and promises required of it under the parties' agreement, except to the extent Plaintiff was otherwise excused from performing those promises based upon Defendants' wrongful conduct by breaching the parties' agreement.

26. Among other breaches, Defendants have now breached the parties' agreement by expressly repudiating their obligation of exclusivity, which was and is a material part of the parties' agreement. Defendants have further breached the parties' agreement by trying to sell products directly to customers, while excluding Plaintiff in the process of doing so.

27. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION:
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

28. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 27 as if fully set forth herein.

29. By their conduct as alleged above, Defendants have also breached the implied covenant of good faith and fair dealing, including by repudiating the parties' agreement at a time when the parties agreed to share purchase orders and the prospects of additional product orders. By their wrongful actions, Defendants have severely prejudiced Plaintiff and deprived it of the benefit of its bargain, including the profits the parties agreed to share and Plaintiff's exclusive right to market the parties' technology.

30. For its part, Plaintiff has performed all terms, conditions, covenants and promises required of it under the parties' agreement, except to the extent Plaintiff was excused from performing those promises because of Defendants' wrongful conduct.

31. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION:
## BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

32. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 31 as if fully set forth herein.

33. As partners with Plaintiff in a partnership created to develop, market, and sell Bluetooth-enabled padlocks, Defendants owed Plaintiff duties of care, loyalty, and good faith.

34. Defendants have breached their fiduciary duties to Plaintiff, including each of the duties alleged above by wrongfully repudiating them. This includes, but is not limited to, licensing the parties' technology to Plaintiff's competitors and competing with Plaintiff to sell the parties' newly-developed product, all in clear breach of the parties' agreement. Defendants breached their fiduciary duties knowingly, willfully, and maliciously, thereby warranting the imposition of punitive damages under *California Civil Code, Section 3294*.

35. As a direct and proximate result of Defendants' breaches, Plaintiff has also suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION:
## FRAUDULENT INDUCEMENT
### (Against All Defendants)

36. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 35 as if fully set forth herein.

37. By affirmatively representing that they would only license digital wireless technology to Plaintiff, that Plaintiff's product concept was subject to a pending United States patent, and that Defendants' product components were NAFTA-compliant, Defendants induced Plaintiff to enter into a licensing agreement and partnership with Defendants, and/or to invest time and resources to market the PAC-BLU product. By doing so, Defendants gained significant benefits including,

without limitation, the benefits of Plaintiff's product development skills, marketing abilities, industry knowledge, and customer contacts.

38.     In investing in Defendants and developing a new product with them, Plaintiff reasonably relied on Defendants' representation, including that Plaintiff would have exclusive rights to licensing digital wireless technology.  During this time, Plaintiff had no reason to believe that Defendants did not intend to honor any of their promises.

39.     Yet, by repudiating their promises to provide Plaintiff with exclusive rights to the parties' digital wireless technology to third parties, and by actually licensing that technology to third parties in competition with Plaintiff, and by lying to Plaintiff regarding the pendency of a United States patent and NAFTA-compliance, Defendants' representations were proven to be false.  Defendants' misrepresentations to this effect were made knowingly, willfully, and maliciously, thereby warranting the imposition of punitive damages under *California Civil Code Section 3294*.

40.     Plaintiff reasonably relied on Defendants' misrepresentations to enter into a licensing and partnership agreement with Defendant, and to invest significant time and resources in the parties' joint venture, thereby causing Plaintiff damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION:
## INTENTIONAL MISREPRESENTATION AND FRAUD
### (Against All Defendants)

41.     Plaintiff incorporates and realleges by reference the foregoing paragraphs 1-40 above as if fully set forth herein.

42.     By their foregoing misrepresentations, Defendants have engaged in fraud. As alleged above, Defendants falsely represented to Plaintiff that Plaintiff would have exclusive rights to the parties' new product technology.  Defendants also misrepresented that their product was subject to a pending United States patent and made in Canada.

43. However, by repudiating the parties' exclusivity agreement, and by admitting that no patent claims were ever filed and by using product components that were apparently made at least in part outside of North America, Defendants' representations were proven to be false.

44. Defendants knew that their representations were false when made, or alternatively, they were made recklessly and without regard for the truth. Each of Defendants' misrepresentations were made knowingly, willfully, and maliciously, thereby warranting the imposition of punitive damages under *California Civil Code Section 3294*.

45. By making these false representations to Plaintiff, Defendants intended that Plaintiff would rely upon then. Plaintiff did, in fact, reasonably rely on Defendants' representations to its detriment.

46. Plaintiff's reasonable reliance on Defendants' misrepresentations directly caused Plaintiff to suffer damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

47. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1-46 as if fully set forth herein.

48. By their foregoing misrepresentations, Defendants have engaged in negligent misrepresentation. As alleged above, Defendants falsely represented to Plaintiff that Plaintiff could have exclusive rights to the parties' new product technology. Defendants also misrepresented that their product was subject to a pending United States patent and made in Canada.

49. However, by repudiating the parties' exclusivity agreement, and by admitting that no patent claims were ever filed and by using product components that were apparently made at least in part outside of North America, Defendants' representations were proven to be false.

50. Defendants knew that their representations were false when made, or alternatively, they made them at a minimum negligently and without regard for their truth.

51. By making these false representations to Plaintiff, Defendants intended that Plaintiff would rely upon then. Plaintiff did, in fact, reasonably rely on Defendants' representations to its detriment.

52. Plaintiff's reasonable reliance on Defendants' misrepresentations directly caused Plaintiff to suffer damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION:
## PATENT FALSE MARKING UNDER 35 U.S.C. § 292
**(Against All Defendants)**

53. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1-52 as if fully set forth herein.

54. Defendants' marking of its digital wireless technology systems with the phrase "patent pending" was and is a false statement because no claim for United States patent protection has apparently ever been filed on those systems. Defendants' false marking was done for the purpose of deceiving, and with the intent to deceive Plaintiff because the patent markings were and are misrepresentations regarding the patent status of the digital wireless technology systems, and Defendants knew their statements were false when made. Defendants' bad faith false marking of their digital wireless technology systems makes this an exceptional case within the meaning of 35 U.S.C. § 285.

55. Defendants' bad faith false marking of its technology as "patent pending" was intentional and knowingly false as Defendants admit that no such patent application was ever filed.

56. Defendants' false marking has caused Plaintiff to suffer a competitive injury and resulted in actual damages. Defendants' false marking was designed to and did deceive Plaintiff into partnering with Defendants, and taking other action and

investing additional time and energy in reliance on Defendants' claim of having a United States patent application pending.

57. Plaintiff is informed and believes, and on that basis alleges, that Defendants continue to falsely mark the digital wireless technology systems and, unless enjoined by this Court, will continue to do so.

# EIGHTH CAUSE OF ACTION:
# INTENTIONAL INTERFERENCE WITH
# PROSPECTIVE ECONOMIC RELATIONS
### (Against All Defendants)

58. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 57 as if fully set forth herein.

59. Plaintiff has developed economic relationships with various telecommunications companies in Mexico and others who have a substantial need for and interest in Plaintiff's PAC-BLU series of padlocks. Plaintiff also developed relationships with several companies in China capable of manufacturing high-quality components needed to build and sell Bluetooth-enabled padlocks. These relationships have already created significant financial benefit to Plaintiff and the likelihood of additional significant financial benefit to Plaintiff.

60. Defendants know of these relationships and the benefits that Plaintiff has received, and is likely going to continue receiving from them. Among other knowledge, by virtue of Plaintiff's introduction to telecommunications companies, and to the Mexican telecommunications industry generally, Defendants were introduced to and became aware of Plaintiff's customer relationships.

61. By now breaching their exclusivity agreement with Plaintiff, including with a prominent marketing company in Mexico, Inter Ximple, Defendants have been selling products directly to Inter Ximple's and, on information and belief, Plaintiff's other customers, and thereby wrongfully excluding Plaintiff. Defendants have also made misrepresentations to the manufacturing companies with whom Plaintiff worked

to build and sell the parties' products, all in an attempt to circumvent Plaintiff and exploit those relationships to Defendants' benefit while excluding Plaintiff.

62. By their conduct, Defendants have knowingly, maliciously, and willfully interfered with Plaintiff's prospective economic relations, thereby warranting the imposition of punitive damages under *California Civil Code Section 3294*.

63. As a direct and proximate result of Defendants' unlawful interference, Plaintiff has also suffered damages in an amount to be shown at trial.

## NINTH CAUSE OF ACTION:
## VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200
## (UNFAIR COMPETITION)
**(Against All Defendants)**

64. Plaintiff incorporates and realleges by reference the foregoing paragraphs 1 through 63 as if fully set forth herein.

65. By their foregoing conduct, Defendants engaged in unfair competition as defined in *California Business and Professions Code section 17200*.

66. Defendants' acts and practices of unfair competition include, among other things: (i) falsely representing that Plaintiff would have exclusivity between Defendants and Plaintiff with respect to the parties' jointly developed digital wireless technology described above; (ii) falsely inducing Plaintiff to enter into an agreement with Defendants; (iii) falsely representing that Defendants' products were subject to a pending United States patent; (iv) falsely representing that Defendants' products were made in Canada and therefore NAFTA-compliant; and (v) by interfering with Plaintiff's prospective economic advantage and existing economic relationships.

67. Unless enjoined by this Court, Plaintiff is informed and believes, and on that basis alleges, that Defendants will continue to engage in the foregoing unlawful acts and practices of unfair competition. As such, a preliminary and permanent injunction is necessary to enjoin Defendants' unlawful conduct.

68. As a direct and proximate result of Defendants' unfair competition, Plaintiff is also entitled and hereby seeks restitution from Defendants for all amounts invested in or with Defendants, in an amount to be shown at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PacLock prays for judgment as follows:

1. For damages according to proof;
2. For punitive damages;
3. For equitable remedies, including unjust enrichment and disgorgement, as allowed for by law;
4. For attorneys' fees and costs;
5. For prejudgment interest;
6. For preliminary and permanent injunctive relief;
7. For a judicial declaration that Defendants are obligated to indemnify Plaintiff for any third-party claims against Plaintiff relating to the parties' business relationship, including without limited to for distributing falsely marked products and/or products that have been distributed or sold in violation of NAFTA; and
8. For such other and further relief as may be permitted by law.

Dated: June 14, 2016

FOX ROTHSCHILD LLP

By: /s/ James E. Doroshow
James E. Doroshow
Jeffrey S. Kravitz
Jeff Grant
Attorneys for Plaintiff
PACIFIC LOCK COMPANY

## JURY DEMAND

Plaintiff demands a jury trial of all claims alleged in this complaint or any amended complaint.

Dated: June 14, 2016

By: FOX ROTHSCHILD LLP

/s/ James E. Doroshow

James E. Doroshow
Jeffrey S. Kravitz
Jeff Grant
Attorneys for Plaintiff
PACIFIC LOCK COMPANY